Timothy B. Smith
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel: (801) 532-1234
TBSmith@parsonsbehle.com

*Attorneys for Plaintiffs*
***ABC IP, LLC and***
***RARE BREED TRIGGERS, INC.***

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company,<br><br>     and<br><br>RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>     *Plaintiff*,<br><br>v.<br><br>HK PARTS INC., a Utah Corporation,<br><br>     *Defendant*. | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>Case No. 2:26-cv-90<br><br>**JURY TRIAL DEMANDED** |

This is an action for patent infringement in which ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse HK Parts Inc. ("HK Parts" or "Defendant") of infringing U.S. Patent Nos. 12,038,247 and 12,031,784 as follows:

### PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.        Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

*3.*        Upon information and belief, Defendant is a corporation located in Utah, with an established place of business at 138 E 12300 S Suite C #240, Draper, Utah 84020.

## JURISDICTION AND VENUE

4.        This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85.

5.        This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6.        Personal jurisdiction over Defendant is proper in this District because the Defendant regularly conducts business in this District, and has therefore purposely availed himself of the privileges and benefits of the laws of the State of Utah.

7.        Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District.

## BACKGROUND

8.        This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 12,031,784 ("the '784 Patent) (together, "the Asserted Patents").

9.        The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

10.    The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

11.    ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

12.    Rare Breed is the exclusive licensee of the Asserted Patents.

13.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

14.    Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## THE INVENTIONS

15.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces

3

pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

16.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

17.     In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

18.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

19.     The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward

4

movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

20.     The claims of the asserted patents define the scope of the patented inventions.

## THE INFRINGING DEVICES

21.     On information and belief, Defendant is currently making, using, selling, and/or offering for sale the Three-Position "AR-15 Super Safety - Forced Reset Selector" (the "First Infringing Device"), which embodies the technology claimed in the Asserted Patents.

22.     On information and belief, Defendant is making, using, selling, and/or offering for sale the First Infringing Device via Defendant's website https://hkparts.net.

23.     Defendant sells or offers for sale the First Infringing Device in two variations. Exemplary photographs of both product variations of the First Infringing Device from Defendant's website are shown below:

     a.   A single lever version; and

     b.   An ambidextrous lever version

 

24.     As demonstrated by Defendant's website, the First Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

**Atrius Ambidextrous Lever Forced Reset Selector for AR-15 Style Firearms**
The Atrius Forced Reset Selector gives AR-15 users three selector positions: SAFE, SEMI, and FULL SEMI. It is designed for mil-spec fire control groups in .223, 5.56, and 300 BLK and uses a mechanically leveraged reset that reduces internal wear compared to traditional forced reset systems. The single lever configuration installs in minutes and provides fast, positive selector engagement under hard use.

25.     On information and belief, Defendant is currently making, using, selling, and/or offering for sale the Three-Position "ARC-Fire Trigger" (the "Second Infringing Device"), which also embodies the technology claimed in the Asserted Patents.

26.     On information and belief, Defendant is making, using, selling, and/or offering for sale the Second Infringing Device via Defendant's website https://hkparts.net. An exemplary photograph from Defendant's website is shown below:



27.     As demonstrated by Defendant's website, the Second Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic ("Active

6

Reset Clutch" or "ARC") with cam modes by moving the safety selector laterally between positions.



## COUNT I –INFRINGEMENT OF THE '247 PATENT

28.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

29.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the First and Second Infringing Devices.

30.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents.

31.     An exemplary comparison of the First Infringing Device with claim 15 of the '247

Patent, when assembled and used as intended, is illustrated in the chart below:

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Forced Reset Selector is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Forced Reset Selector** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Forced Reset Selector (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br><br><br>(Plaintiff-generated renderings of Forced Reset Selector here and below) |
| to pivot on a transverse hammer pivot axis between | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br><br>**(Hammer Set Position Above)**<br><br><br><br>**(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Forced Reset Selector (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.   The trigger member (Brown) has a sear. |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
|  |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| | **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).<br>**(Disconnector Hook Engaged)** |
| and a cam having a cam lobe and adapted to be movably mounted in the | The Forced Reset Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Forced Reset Selector, shown in yellow, in fire control mechanism pocket) |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| fire control mechanism pocket, | <br>**(Forced Reset Selector Cam with Lobe and Lever)** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**(Cam and Lobe First Position Above)**<br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| |  **(Cam and Lobe Second Position Above)** |
| whereupon in a standard semi-automatic mode, said cam is in said first position, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position.  |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| | |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| member to fire the firearm, and |  |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode,  |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull said trigger member (Brown) to fire the firearm. |

| '274 Patent Claim 15 | First Infringing Device (Forced Reset Selector) |
|---|---|
| |  |

32.    An exemplary comparison of the Second Infringing Device with claim 15 of the

'247 Patent, when assembled and used as intended, is illustrated in the chart below

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the ARC-Fire is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| | **ARC-Fire**<br>https://activesafetydesigns.com/ar15/arc-fire-trigger-ambi-kit/ |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The ARC-Fire (Yellow/Blue) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).<br><br><br><br>**(Plaintiff-generated renderings of ARC-Fire here and below)** |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| | <br>**(Hammer Set Position Above)**<br><br>**(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger | The ARC-Fire (Yellow/Blue) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions.  The trigger member (Brown) has a sear. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| member pivot axis between set and released positions, |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| |  **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). <br><br> **(Disconnector Hook Engaged Above)** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The ARC-Fire (Yellow/Blue) has a lever (Yellow) with a cam lobe that is adapted to be movably mounted in the fire control mechanism pocket.  (*See* Image above depicting ARC-Fire, shown in (Yellow/Blue), in fire control mechanism pocket) |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| |  |

**(ARC-Fire Lever with Cam Lobe)**

| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**(Cam and Lobe First Position Above)**<br><br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| | <br>**(Cam and Lobe Second Position Above)** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,<br><br>In the SEMI position, the ARC Lever will not engage the Cam as its rotated rearward leaving the Cam in the unlocked position. |
| said cam is in said first position, | the cam is in the first position. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, |  Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br> |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member (Brown) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br> |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| | |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode,  In the active reset position the ARC Lever is pushed into the Cam allowing the Lever to interact with the Cam. |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.  |

| '247 Patent Claim 15 | Second Infringing Device (ARC-Fire) |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br> |
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member (Brown) to fire the firearm.<br> |

33.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '247 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the First and Second Infringing Device.

34.    One example of this is the promotional material found on Defendant's website (e.g., https://hkparts.net/triggers-packs-housings/ar-15-super-safety-forced-reset-selector-ambidextrous-levers) that informs customers to install the First Infringing Device into an AR15 and provides instructions to do so:

**Features:**
- Simple drop in installation that replaces the factory safety
- Works with standard AR-15 mil-spec fire control groups without modification
- Leveraged reset action that reduces internal wear
- Heat treated 4140 steel with a corrosion resistant finish
- Smooth tactile movement with a clean 90 degree throw
- Secure selector positions that prevent movement during firing
- Ergonomic lever with fast indexing under stress
- Made in the USA

**Specifications:**
- T10 selector screw with 4 40 thread
- Recommended torque is 15 inch pounds using blue Loctite
- H2 or H3 buffer recommended
- Requires a lower receiver with an FA pocket or a low shelf
- Requires an FA profile bolt carrier group
- Requires a mil-spec trigger with a squared rear surface and no relief cut

35.    Defendant's website for the First Infringing Device provides compatibility information for AR-15 rifles:



**Compatible With:**

- AR-15 platforms using mil-spec fire control groups in .223, 5.56, or 300 BLK
- **Verify compatibility for your specific AR here:** Compatibility
- **NOT compatible with HK416, MR556**

**May Require Gunsmithing:**

- AR-9 variants
- Firearms modified to Super Safety specifications due to dovetail tolerance and limited cam engagement

36.     Defendant's website for the First Infringing Device also directs customers to the "Atrius FRS Compatibility" webpage, which provides additional installation instructions and compatibility information:





37.    Another example of Defendant's active steps to induce others, including its customers, to directly infringe the '247 patent is the promotional material found on Defendant's website (https://hkparts.net/hk-rifle-smg-parts/hk416-mr556-arc-fire-trigger-3-position-ambi-controls) that informs customers to install the Second Infringing Device into an AR15:

> **HK416, MR556 3-Position ARC-Fire Trigger with Ambidextrous Controls**
>
> AS Designs' ARC-Fire (Active Reset Clutch) trigger is an innovative take on forced reset triggers. The trigger is reset immediately after each shot, resulting in rapid follow-up shots with one compliant round per trigger action sent down the barrel.
>
> Standard AS Designs AR-15 ARC-Fire kits are not compatible with the HK416 and MR556 platform. This kit provides the necessary modifications and components to function in those platforms.
>
> This 3-position trigger with ambi selector levers is a direct fit in MR556 and HK416 firearms but the selector levers do not align with the factory pictogram. See included pics for selector layout.

38.    Defendant's website for the Second Infringing Device provides compatibility information for AR-15 rifles:

> **Compatible With:**
>
> - HK416 A5 (1.8mm gas vent screw recommended)
> - HK MR556 A4 (1.8mm gas vent screw recommended)
> - HK MR556 A1 (will require an adjustable gas block to cycle)
> - HK416 A1, A3 (will require an adjustable gas block to cycle)

39.      Defendant's website for the Second Infringing Device provides installation instructions, including videos encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Device:

**Tuning Your Rifle To Cycle Reliably:**

Depending on your configuration and ammo selection, you may need to increase or decrease the gas vent screw size. MR556 A4 rifles and pistols are equipped with a 1.3mm gas vent screw from factory. A 1.8mm gas vent screw was optimal for our MR556 A4 11" and 16" barrel rifles using standard M195 ball 55gr 5.56 ammo. User experience will vary, therefore, it may take some trial and error to identify the perfect size gas vent screw for your particular configuration and ammunition. Most configurations will cycle well with a gas vent screw in the 1.6mm-2.0mm range.

Ejection patterns should be approximately 3-4 o'clock. If you observe your casings ejecting closer to 1 o'clock (over-gassed), go UP in vent screw size to CLOSE gas block. If ejecting closer to 5 o'clock (under-gassed), go DOWN in vent screw size to OPEN gas block.





40.      On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 15 of the '247 Patent.

31

41.    On information and belief, Defendant also contributes to the infringement of the '247 patent by others, including their customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

42.    Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service and filing of this complaint.  Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities.  As such, Defendant willfully infringes the '247 Patent.

43.    By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

44.    By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

45.    By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

46.    Defendant's infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

47.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

48.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT 2 – INFRINGEMENT OF THE '784 PATENT

49.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

50.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 Patent. Such unlicensed products include the First and Second Infringing Devices.

51.    On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

52.    An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent, when assembled and used as intended, is illustrated in the chart below:

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Forced Reset Selector is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>**Forced Reset Selector**<br>**https://atrius.dev/atrius-forced-reset-selector/**<br><br><br><br>**Forced Reset Selector Installed**<br>(Plaintiff-generated renderings of Forced Reset Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Forced Reset Selector operates as a locking member and has a first position in which it locks the trigger member against pulling movement. |

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
| |  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Forced Reset Selector is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Forced Reset Selector is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
| |  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Forced Reset Selector has an upward extending portion (Yellow lever arm) configured to make actuating contact with a surface of the bolt carrier. |

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
| | <br><br>The body portion (Purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (Blue)<br><br><br><br>Once installed, the body portion (Purple) is movably supported by the lower receiver (grey) using the detent (blue).<br><br>**(section view of body portion (Purple), lower receiver (Grey), and detent (Blue) for clarity)** |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position. |

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
|  | <br><br>**Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Forced Reset Selector has a body portion (Purple) that is movably supported by the lower receiver.<br><br> |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion | The Forced Reset Selector has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow). |

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
| between an extended position |  Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving. |

| '784 Patent Claim 1 | First Infringing Device (Forced Reset Selector) |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.<br><br> |

53.    An exemplary comparison of the Second Infringing Device with claim 1 of the '784

Patent, when assembled and used as intended, is illustrated in the chart below

| '784 Patent Claim 1 | Second Infringing Device (ARC-Fire) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | The ARC-Fire is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br>**ARC-Fire**<br>https://activesafetydesigns.com/ar15/arc-fire-trigger-ambi-kit/ |

| | |
|---|---|
| |  **ARC-Fire Installed**<br>(Plaintiff-generated renderings of ARC-Fire here and below) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The ARC-Fire (Yellow/Blue) operates as a locking member and has a first position in which the ARC-Fire locks the trigger member against pulling movement.<br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The ARC-Fire (Yellow/Blue) is moveable from the first position to a second position where it does not restrict movement of the trigger member. |



|  | |
| --- | --- |
|  | **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The ARC-Fire (Yellow/Blue) is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).<br><br>**(section view of body portion for clarity)** |

| | |
|---|---|
| |  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The ARC-Fire (Yellow/Blue) has an upward extending portion (Yellow) configured to make actuating contact with a surface of the bolt carrier. |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |



**Unlocked Second Position**

| the locking member having a body portion that is movably supported | The ARC-Fire (Yellow/Blue) has a body portion (Blue) that is movably supported by the lower receiver using a detent (purple). |
|---|---|
| |  |
| | **(section view of body portion (Blue) for clarity)** |
| |  |
| | The body portion (Blue) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (Purple) |



Once installed, the body portion (Blue) is movably supported by the lower receiver (grey) using the detent (purple).

**(section view of body portion (Blue), lower receiver (Grey), and detent (Purple) for clarity)**

| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The ARC-Fire has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green).  Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.  |

| and a deflected position. | The lever is now shown deflected independent of the body. |
|---|---|
|  |  |

54. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the First and Second Infringing Device.

55. One example of this is the promotional material found on Defendant's website (e.g., https://hkparts.net/triggers-packs-housings/ar-15-super-safety-forced-reset-selector-ambidextrous-levers) that informs customers to install the First Infringing Device into an AR15 and provides instructions to do so:

**Features:**

- Simple drop in installation that replaces the factory safety
- Works with standard AR-15 mil-spec fire control groups without modification
- Leveraged reset action that reduces internal wear
- Heat treated 4140 steel with a corrosion resistant finish
- Smooth tactile movement with a clean 90 degree throw
- Secure selector positions that prevent movement during firing
- Ergonomic lever with fast indexing under stress
- Made in the USA

**Specifications:**

- T10 selector screw with 4 40 thread
- Recommended torque is 15 inch pounds using blue Loctite
- H2 or H3 buffer recommended
- Requires a lower receiver with an FA pocket or a low shelf
- Requires an FA profile bolt carrier group
- Requires a mil-spec trigger with a squared rear surface and no relief cut

56.    Defendant's website for the First Infringing Device provides compatibility information for AR-15 rifles:

**Compatible With:**

- AR-15 platforms using mil-spec fire control groups in .223, 5.56, or 300 BLK
- **Verify compatibility for your specific AR here:** Compatibility
- **NOT compatible with HK416, MR556**

**May Require Gunsmithing:**

- AR-9 variants
- Firearms modified to Super Safety specifications due to dovetail tolerance and limited cam engagement

57.    Defendant's website for the First Infringing Device also directs customers to the "Atrius FRS Compatibility" webpage, which provides additional installation instructions and compatibility information:

49





58.     Another example of Defendant's active steps to induce others, including its customers, to directly infringe the '247 patent is the promotional material found on Defendant's website     (https://hkparts.net/hk-rifle-smg-parts/hk416-mr556-arc-fire-trigger-3-position-ambi-controls) that informs customers to install the Second Infringing Device into an AR15:

> **HK416, MR556 3-Position ARC-Fire Trigger with Ambidextrous Controls**
>
> AS Designs' ARC-Fire (Active Reset Clutch) trigger is an innovative take on forced reset triggers. The trigger is reset immediately after each shot, resulting in rapid follow-up shots with one compliant round per trigger action sent down the barrel.
>
> Standard AS Designs AR-15 ARC-Fire kits are not compatible with the HK416 and MR556 platform. This kit provides the necessary modifications and components to function in those platforms.
>
> This 3-postition trigger with ambi selector levers is a direct fit in MR556 and HK416 firearms but the selector levers do not align with the factory pictogram. See included pics for selector layout.

59.     Defendant's website for the Second Infringing Device provides compatibility information for AR-15 rifles:

> **Compatible With:**
>
> - HK416 A5 (1.8mm gas vent screw recommended)
> - HK MR556 A4 (1.8mm gas vent screw recommended)
> - HK MR556 A1 (will require an adjustable gas block to cycle)
> - HK416 A1, A3 (will require an adjustable gas block to cycle)

60.     Defendant's website for the Second Infringing Device provides installation instructions, including videos encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Device:

> **Tuning Your Rifle To Cycle Reliably:**
>
> Depending on your configuration and ammo selection, you may need to increase or decrease the gas vent screw size. MR556 A4 rifles and pistols are equipped with a 1.3mm gas vent screw from factory. A 1.8mm gas vent screw was optimal for our MR556 A4 11" and 16" barrel rifles using standard M195 ball 55gr 5.56 ammo. User experience will vary, therefore, it may take some trial and error to identify the perfect size gas vent screw for your particular configuration and ammunition. Most configurations will cycle well with a gas vent screw in the 1.6mm-2.0mm range.
>
> Ejection patterns should be approximately 3-4 o'clock. If you observe your casings ejecting closer to 1 o'clock (over-gassed), go UP in vent screw size to CLOSE gas block. If ejecting closer to 5 o'clock (under-gassed), go DOWN in vent screw size to OPEN gas block.





61.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 1 of the '784 Patent.

62.     On information and belief, Defendant also contributes to the infringement of the '784 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

63.     Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service and filing of this complaint.  Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively

high likelihood that its actions constitute infringement, Defendant has continued its infringing activities.  As such, Defendant willfully infringes the '784 Patent.

64.     By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

65.     By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

66.     By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

67.     Defendant's infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

68.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

69.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendant as follows:

a.     Each of the Asserted Patents has been and continues to be infringed by Defendant;

b.     Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c.     Each of the Asserted Patents is enforceable and not invalid;

d.      A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e.      A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f.      An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.      An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: February 4, 2026                    Respectfully submitted,

*/s/ Timothy B. Smith*
    Timothy B. Smith
    **PARSONS BEHLE & LATIMER**
    201 South Main Street, Suite 1800
    Salt Lake City, Utah 84111
    Tel: (801) 532-1234
    E-mail: TBSmith@parsonsbehle.com

    Matthew A. Colvin (pro hac vice forthcoming)
    Texas Bar No. 24087331
    Carl E. Bruce(pro hac vice forthcoming)
    Texas Bar No. 24036278
    **FISH & RICHARDSON P.C.**
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    E-mail: colvin@fr.com
            bruce@fr.com
    Tel: (214) 747-5070
    Fax: (214) 7472091

    Ben Christoff (pro hac vice forthcoming)
    DC Bar No. 1025635
    **FISH & RICHARDSON P.C.**
    1001 Maine Avenue SW, Suite 1000
    Washington, DC 20024
    E-mail: christoff@fr.com
    Tel: (202) 783-5070
    Fax: (202) 783-2331

    Glenn D. Bellamy (pro hac vice forthcoming)
    **WOOD HERRON & EVANS LLP**
    600 Vine Street, Suite 2800
    Cincinnati OH 45202
    E-mail: gbellamy@whe-law.com
    Tel: (513) 707-0243
    Fax: (513) 241-6234

    *Attorneys for Plaintiffs*
    ***ABC IP, LLC, and***
    ***RARE BREED TRIGGERS, INC.***